STROUD *v.* FRYAR.

4-9082                                     225 S. W. 2d 23

Opinion delivered December 12, 1949.

*Yingling & Yingling,* for appellant.

*Gordon Armitage,* for appellee.

ED. F. McFADDIN, Justice.   This case grows out of a situation created by the adoption of Initiated Act No. 1

of 1948,[1] commonly called the School District Reorganization Act.[2]

Appellants, Stroud *et al.*, brought suit in the chancery court of White County against appellees, Fryar, *et al.*, who are the members of the White County Board of Education. The amended and substituted complaint alleged: that on June 1, 1949, there were eleven school districts in White County, each having less than 350 children of school age on March 1, 1949, as reflected by the 1948 school enumeration; that by reason of Initiated Act No. 1 of 1948 these eleven districts were automatically formed into one school district (which we will refer to as the "United" District); that section 2 of said Initiated Act requires the County Board of Education to call an election to choose the directors of the United District; that instead of calling such election, the White County Board of Education, by order of June 2, 1949, dismembered the United District by annexing all, or the greater portion, of its territory to several other school districts that were not a part of the United District; and that the County Board of Education thereby rendered nugatory section 2 of the said Initiated Act. The prayer of the complaint was that the orders dismembering the United District (by annexing its territory to other districts) be set aside; and that the defendants be required to call an election to choose the school directors of the United District, as provided by section 2 of the Initiated Act.

The defendants filed a demurrer, which the chancery court sustained "for want of jurisdiction of this court of this cause of action." The plaintiffs did not suggest that the demurrer be treated as a motion to transfer to law, nor did they request that the case be so transferred. Rather, when the complaint was dismissed "for want of jurisdiction," the plaintiffs excepted and prayed an appeal to this court. So the question here

[1] The Act in its entirety may be found on page 1414, *et seq.*, of the printed acts of 1949.

[2] Acts 324 and 452 of the 1949 Legislature involve situations arising out of Initiated Act No. 1 of 1948. Those acts and their validity are not germane to the questions here involved. They are mentioned as a matter of information.

is whether the chancery court had jurisdiction, tested by the allegations of the plaintiffs' amended and substituted complaint.

At the outset, it is clear that (1) if the White County Board of Education was required at all events to call an election under section 2 of the Initiated Act, then the appellants are entitled to some form of relief; but that (2) if the Initiated Act allows the County Board of Education to proceed as it did, then defendants cannot be enjoined. So the question is, whether the Initiated Act allows the County Board of Education to proceed as the complaint alleges that it did in this case. We are therefore required to ascertain the power of the County Board of Education under the Initiated Act; and in so doing we study the entire Act to ascertain the legislative[3] intent.

Initiated Act No. 1 of 1948 was adopted by the People at the general election on November 2, 1948. In effect, it classifies school districts, as regards the number of children of school age therein, to be of two kinds: (1) those containing 350 or more such children on March 1, 1949, as reflected by the 1948 school enumeration; for brevity, we refer to these as "Large" Districts; they are not imperatively affected by the Act; and (2) those containing less than 350 such children on March 1, 1949, as reflected by the 1948 school enumeration; for brevity, we refer to these as "Small" Districts; they are the ones directly and vitally affected by the Act.

Section 1 of Initiated Act No. 1 provides, in effect, that on June 1, 1949, there would be formed in each county a United District,[4] to be composed of all the "Small" Districts in such county. From the adoption of the Initiated Act until March 1, 1949, each Small District was privileged to proceed towards annexation or consolidation independent of the Initiated Act. In other words, the Small Districts were given a period of grace in

---

[3] Even though this was an initiated act, nevertheless, we use the expression "legislative intent", because the people take the place of the legislature in the adoption of initiated acts.

[4] As previously explained, we use the term "united" to indicate the district that was automatically formed by the union of all the small districts.

which to endeavor to ·join with other districts under existing laws. But when the United District came into existence on June 1, 1949, the Small Districts were thereby automatically integrated into it, and lost their previous status as separate school districts.

Section 2 provides for the election of school directors in the United District. The County Board of Education is to call the election, to be participated in by "qualified electors residing in the territory of the new[5] district."

Section 3 requires the County Board of Education to "study the entire school program of its county"; and then the Act contains this highly important language:

"If it is found that some or all portions of the new (1) School District as created herein can be served more effectively and more efficiently by another district or districts, the County Board of Education with the consent of the Board of Directors of the school district to which such annexation is proposed, is hereby authorized and directed to make such annexation or annexations."

This quoted language gives the County Board of Education power to take any or all territory of the United District and annex such territory to any Large District or Districts, conditioned only on the consent of such larger Districts so affected; and conditioned on approval of the State Board of Education if annexation be across a county line. There is no provision in the Initiated Act requiring the County Board of Education—before the directors could have been chosen for the United District—to obtain the consent of any of the patrons in the United District as a prerequisite to such annexations. This conclusion' is determinative of this case, because the dismemberment of the United District was accomplished before there could have been any election of directors in the United District. We use the election of directors as the decisive date in this case, because the action of the County Board of Education here challenged occurred before any such election could have been held. We are not here required to decide whether

---

[5] This means the United District, as we use that term.

school consolidation or annexation laws, existing independently of Initiated Act No. 1, would apply in matters of annexation *after* the directors have been chosen for the United District. That question is reserved.

Section 3 of the Initiated Act also provides for appeal, reading:

"Appeals from the action of any County Board of Education on matters of annexation as authorized herein may be filed within thirty days from the date of such action with any court of competent jurisdiction."

Section 4 says *"except as otherwise provided in this Act* all matters of reorganization and annexation of school districts undertaken under the provisions of this Act shall be in accordance with existing laws." (Italics our own.) The italicized language thus clearly exempted from the provisions of the existing laws such reorganizations and annexations as might be accomplished under section 3 of the Initiated Act before the school directors could have been chosen in the United District; and this italicized language emphasizes the conclusion we have reached in regard to the power of the County Board of Education in the case at bar.

So, to summarize: The County Board of Education of White County had the power, under Initiated Act No. 1, to proceed in the manner alleged in the complaint. The wisdom of the Initiated Act is not a matter for the courts to decide; the People made that decision in adopting it. The constitutionality of the Act is not argued in this litigation, and it does not necessarily present itself. In view of the facts stated in the complaint—*i.e.,* the dismemberment of the United District before its directors could have been elected—appellants have no grounds for seeking an election in such district.

It follows that the chancery court ruled correctly in denying the appellants' petition for injunction. Affirmed.