STATE BOARD OF EDUCATION *v.* WEAVER.

4-9504                                      240 S. W. 2d 659

Opinion delivered June 11, 1951.

*Ike Murry,* Attorney General, *Francis W. Wilson,* Assistant Attorney General and *J. B. Reed,* for appellant.

*Sam Laser, Wm. M. Moorhead* and *Ralph E. Ray,* for appellee.

HOLT, J. This appeal comes from the Pulaski Circuit Court, Second Division. Appellants challenge the correctness of that judgment.

The question presented, say appellants, is: "What are and what are not the powers of the State Board of Education with respect to across county annexations under the terms of Initiated Act 1 of 1948?"

More specifically, say appellees, the question is: "Does the State Board of Education have the sole and exclusive authority to originate and make across county line annexations of School District territory in districts located in different counties on its own initiative when not recommended by the County Board of Education in the affected area under Initiated Act No. 1 of 1948?"

The question appears to be of first impression.

The trial court filed the following written opinion on which the judgment was based: "By resolution adopted July 11, 1949, and reaffirmed on September 12,

1949, the State Board of Education undertook to annex to Pulaski County Special School District a certain area of Lonoke County which takes in all of the Old Toltec No. 91 School District, parts of Walt District No. 39, Cross Pikes Special District No. 15, and 4½ sections of Lonoke School District No. 1. Four and three-quarters sections of the area were excepted from the resolution, but a description of such sections is not important to a decision in this case. It is assumed that all of the territory in Lonoke School District No. 1 was excepted.

"The action of the State Board of Education was predicated on the petition of a majority of the qualified electors of the affected area which is located in Lonoke County and a resolution adopted by the Directors of the Pulaski County Special School District approving the annexation. The Lonoke County Board of Education refused to recommend the annexation. A minority of the electors in the area feel that the educational needs of the children in the affected territory can best be served by annexation to England School District No. 2 of Lonoke County. This minority is through certiorari undertaking to have the action of the State Board of Education in making the annexation reviewed. An attempt was first made to have the action of the State Board in making the annexation declared void by effecting an appeal to this court. After some unavoidable delay in obtaining a hearing, the appeal was dismissed because the law does not provide for an appeal from orders of the State Board of Education and thereupon this litigation was instituted.

"Numerous questions have been raised and capably presented in the excellent oral arguments of and trial briefs submitted by counsel. However, there appears to be only one vital question in the case, i. e.: Does the State Board of Education have the sole and exclusive authority to effect across county line annexations of territory in school districts located in different counties on its own initiative and without the recommendation or consent of any individual or organization? If the answer is 'Yes,' then the writ sought by the peti-

tioners must be denied. If the answer is 'No,' it necessarily follows that the writ should be granted.

"THE LAW—Disposition of this case calls for an interpretation of Initiated Act No. 1, adopted at the general election on November 2, 1948. It will be referred to herein as Act No. 1 or The Act. As of June 1, 1949, Act No. 1 created a new school district (designated as a United District by the Arkansas Supreme Court) in each county of the state, which said district was composed of the territory of all school districts administered in the county which had less than 350 enumerated school children on March 1, 1949, as shown by the 1948 enumeration. Provision is made for the election of directors of the new district, their duties are prescribed and the district is placed under the general supervision of the county school supervisor.

"Section 3 of the Act, in addition to authorizing appeals from orders of the County Board of Education on matters of annexation provides: 'It shall be the duty of the newly elected school board and the County Board of Education not only to provide an accredited elementary school for every child as close to his home as possible, but also to provide every child access to an accredited high school. To accomplish this purpose, each County Board of Education shall study the entire school program of its county. If it is found that some or all portions of the new school district as created herein can be served more effectively and more efficiently by another district or districts, the County Board of Education with the consent of the Board of Directors of the school district to which such annexation is proposed, is hereby authorized and directed to make such annexation or annexations. Provided that if any territory shall be annexed to a district administered in another county the question of annexation shall be submitted to the State Board of Education. If in the judgment of the State Board of Education the proposed annexation should be made, it shall adopt a resolution making the annexation. The resolution shall describe by metes and bounds each district affected by the annexation, and a copy of said

resolution shall be sent to the County Clerk of each County affected who shall record same.'

"Section 4 of the Act reads in part as follows: 'Except as otherwise provided in this Act, all matters of reorganization and annexation of the school districts undertaken under the provisions of this Act shall be made in accordance with existing laws.'

"Act 327 of the 1947 General Assembly provides a method whereby across county line annexations or changes in the boundaries of school districts located in different counties may be effected. Briefly, this is accomplished through orders of the County Boards of Education entered, in their discretion, upon petition of a majority of the qualified electors in each district affected.

"It will thus be seen that under the law there are three probable methods of effecting across county line annexations, to-wit:

"1. On order of the State Board of Education entered of its own volition without recommendation or petition from any source.

"2. On order of the State Board of Education based upon a proposal from the County Board of Education of the county in which the territory to be annexed is situated and with the consent of the directors of the District in other county to which the annexation is to be made.

"3. By following the procedure prescribed in Act 327 of 1947.

"No serious contention is made here that methods 2 and 3 above, were followed. In fact, the resolution adopted by the State Board of Education sets out that Act No. 1 gives the State Board 'power to make annexations across county lines.' The Act is ambiguous to such an extent as to justify judicial interpretation. In the construction and interpretation of laws, the intention of the Legislating Authority (in this case the people) is to be ascertained from the language of the Act if that can be done. In doing this, each clause and section of the Act

must be read and considered in the light of every other clause and section and the objects and purposes of the Act are likewise to be given consideration. In determining the legislative intent, the enacting clause may be studied in the light of the provisions of the Act itself, and a reasonable conclusion reached regarding the objective to be accomplished.

"It will be noted that among the purposes stated in the enacting clause are 'to empower the County Board of Education to annex any portion, or all, of the newly created district to another district or districts.' There is no mention of authorization for the State Board of Education to effect an annexation. In § 3 of the Act, the duty and responsibility is placed upon the school board and the County Board of Education to provide an accredited elementary school for every child as close to his home as possible and to provide every child access to an accredited high school. The same section requires that the County Board of Education study the entire school program of its county. After study of the situation, the County Board of Education may with consent of the Directors of the District to which territory is to be added annex any portion of the newly created district to another district, that is, within the county. The main contention arises from the proviso 'that if any territory shall be annexed to a district administered in another county, the question of annexation shall be submitted to the State Board of Education. If in the judgment of the State Board of Education the proposed annexation should be made, it shall adopt a resolution making the annexation.'

"It will be noted that the language 'if any territory shall be annexed to a district administered in another county' . . . implies previous action by some individual or organization before submission to the State Board of Education. Then the Act continues: 'The question of annexation shall be submitted to the State Board of Education.' Some pertinent questions immediately arise, such as, (a) If such territory shall be annexed, by whom? (b) Who is to propose the annexation? and (c)

Who shall submit the matter to the State Board of Education?

"Recalling that the primary responsibility for maintaining accredited elementary and high schools is placed upon the county boards of education and the school directors by the Act, it seems that the only reasonable and practical conclusion is that the County Board of Education, with the consent of the Directors of the District affected, would be the logical and practical ones to originate, propose, and submit questions of across county line annexation. It must be borne in mind that the objects and purposes of the Act are to provide accredited schools to all children within the county and the responsibility for doing this is placed solely on the County Board of Education and the School Directors.

"This being true, it would hardly be reasonable, in the absence of clear, plain, and unambiguous language, to say that the people intended to place the primary responsibility for maintaining standardized schools on local school authorities and at the same time place them in a position to lose revenue-producing territory without being able to be heard in protest. Had the initial responsibility for maintaining accredited schools in the United Districts of the various counties been placed on the State Board of Education rather than on local authorities, it seems that the objects and purposes of the act could have been best accomplished by placing the sole discretion for across county line annexations, or even within the county annexations, in the hands of the State Board of Education. But such is not the case here since local authorities are responsible for meeting standard educational requirements. In the determination of the question now before the court, it is not necessary to decide whether method 2 or 3 above-referred to might be followed by the parties. However, there is a possibility that the interested individuals and organizations may be helped toward a solution of their problem by the following language from an opinion of the Supreme Court delivered December 12, 1949, in the case of *Stroud* v. *Fryar,* 216 Ark. 250, 225 S. W. 2d 23, to-wit:

" 'Section 3 required the County Board of Education to "study the entire school program of its county"; and then the Act contains this highly important language: "If it is found that some or all portions of the new (1) School District as created herein can be served more effectively and more efficiently by another district or districts, the County Board of Education with the consent of the Board of Directors of the school district to which such annexation is proposed, is hereby authorized and directed to make such annexation or annexations." This quoted language gives the County Board of Education power to take any or all territory of the United District and annex such territory to any Large District or Districts, conditioned only on the consent of such larger Districts so affected; *and conditioned on approval of the State Board of Education* if annexation be across a county line.'

"The clear implication of the quotation from the Stroud case is that in order for the territory in Lonoke County to be annexed to the Pulaski County Special School District, it will be necessary for the County Board of Education of Lonoke County to act with the consent of the Directors of the Pulaski County Special School District and in addition thereto obtain the approval of the State Board of Education.

"*CONCLUSION*—From the foregoing, it necessarily follows that the Writ of *Certiorari* sought in this case should be granted and that the order of the State Board of Education annexing the involved territory, located in Lonoke County to the Pulaski County Special School District should be set aside."

After consideration of the briefs, and a review of the record presented, we have concluded that the trial court has correctly construed the provisions of Initiated Act 1 and the governing legal principles involved, and we adopt the court's opinion as our own.

Affirmed.